UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                            )
                                                  )
    WENDY LEANA GROSS          )       Case No. 08-17539-SSM
                                                  )       Chapter 13
                Debtor      )


**MEMORANDUM OPINION ON MOTION TO DISGORGE FEES PAID TO, AND IMPOSE FINES UPON, BANKRUPTCY PETITION PREPARER JULIA MAE TOLBERT**

Before the court is the motion of W. Clarkson McDow, Jr., United States Trustee, Region Four ("U.S. Trustee") for disgorgement of fees paid to bankruptcy petition preparer Julia Mae Tolbert ("the respondent") and for imposition of sanctions against her for violations of § 110, Bankruptcy Code. An evidentiary hearing was held on June 23, 3009, at which the debtor testified and the court received documentary evidence. Although Ms. Tolbert filed a written response to the motion, she did not appear at the hearing.[1] For the reasons stated, the court will grant the motion in part and order partial disgorgement of the fees paid to Ms. Tolbert by the debtor and will award statutory damages.

<u>Background and Findings of Fact</u>

On December 2, 2008, Wendy Leana Gross ("the debtor") filed a voluntary petition in this court for adjustment of her debts under chapter 13 of the Bankruptcy Code. Although the petition represented that she had not filed *any* prior bankruptcy cases within the last eight years,

---

[1] Ms. Tolbert's response was mailed to the United States Trustee, who provided it to the court at the hearing. It has since been docketed by the clerk.

in fact this was the debtor's third bankruptcy filing in this court. The first, a chapter 7 case filed jointly with her then-husband in October 2002, resulted in a chapter 7 discharge.[2] The second, a chapter 13 case filed in October 2008, was dismissed on November 24, 2008, for failure to file a certificate of credit counseling.[3] The present case, filed a week later, was dismissed on April 15, 2009, after the original and a modified plan were denied confirmation and the debtor failed to file a further modified plan within the allowed 20-day period. In dismissing the case, the court, at the request of the United States Trustee, expressly retained jurisdiction to "determine whether third parties assisting the debtor in connection with this case—including but not limited to Julia Tolbert—violated applicable rules governing the unauthorized practice of law or applicable statutory provisions governing bankruptcy petition preparers, and, if so, ordering disgorgement of fees and imposing appropriate sanctions." The present motion was filed on May 15, 2009, and seeks disgorgement of $1,199 in fees paid by the debtor, the imposition of a $500 fine, and the imposition of a $2,400 penalty.

The debtor's petition included a signed declaration by Ms. Tolbert that she had prepared the petition for compensation as a bankruptcy petition preparer. The schedule of exempt property (Schedule C) claimed exemptions under 11 U.S.C. § 522(b)(3) and various provisions of Virginia law. Specifically, a total of $1,050 in cash, a checking account, and jewelry were claimed exempt under the Virginia homestead exemption, Va. Code Ann. § 34-4, while $2,100 in household goods and clothing were claimed exempt under the Virginia poor debtor's exemption, *id.* § 34-26. Curiously, although the schedule of exemptions lists appliances valued

---

[2] *In re* Gilbert J. Murray and Wendy Leana Gross, No. 02-85260-SSM.

[3] *In re* Wendy Leana Gross, No. 08-16413-RGM.

at $850 and an automobile valued at $5,400, the amount claimed exempted for those items is zero.[4]  On the statement of financial affairs, the debtor reported a payment to Ms. Tolbert of $1,199 in response to a question asking for all payments made to any person for consultation concerning debt consolidation, relief under the bankruptcy law, or preparation of a petition in bankruptcy.  In addition to signing the petition, Ms. Tolbert also signed the bankruptcy petition preparer certifications on the means test form, the notice to individual consumer debtor, and Official Form 19, including the required Notice to Debtor by Non-Attorney Bankruptcy Petition Preparer.  She did not, however, prepare or sign (or if she did, the debtor did not file) the required Disclosure of Compensation of Bankruptcy Petition Preparer (Form B280).

At the hearing, the debtor testified that she works in Capital Heights, Maryland, and has lived in Woodbridge, Virginia, since 1989 except for a period from 2002 to 2005, when she lived in Maryland.  In the period leading up to the October 2008 filing, she was injured at work but her worker's compensation claim was denied.  As a result, she fell behind in her car payments and was worried that she would lose the car.  While at a restaurant for lunch, she saw a flyer for an enterprise called "Bankruptcy Today."  It was captioned, "Are you tired of being broke and behind on your bills?  1-877-485-2344  www.bankruptcy2day.com."  The advertised prices were "Only $599" for Chapter 7 and "Only $1199" for Chapter 13, with "Legal service available for legal advice."  The debtor called the listed telephone number and spoke with a Mike Lewis.  A day or two later, Mr. Lewis and a Cheryl Brooke came to her house and told her she could file

---

[4] The vehicle is listed on the debtor's schedules as being worth $5,400, subject to a "judgment lien" in favor of Nuvell Credit Company, LLC in the amount of $16,562.  The proof of claim filed by Nuvell reflects that Nuvell is the assignee (from the selling automobile dealer) of a consensual purchase-money security interest.

3

bankruptcy by herself and did not need a lawyer. Mr. Lewis asked her if she had filed before, and upon learning that she had, told her she would need to file under chapter 13. Ms. Brooke quoted her a fee of $1,200, and the debtor paid $200 at that time. Mr. Lewis and Ms. Brooke gave her an information package to fill out. She filled out the paperwork, and at a later date met again with Mr. Lewis and Ms. Brooke in Bowie, Maryland, gave them the completed paperwork, and was told that Julia Tolbert would be preparing the petition. The debtor gave Mr. Lewis and Ms. Brooke two post-dated checks of $600 each payable to Bankruptcy Today, and was told not to disclose or mention the involvement of Bankruptcy Today. She subsequently received a call from Ms. Tolbert and went to her house in Oxon Hill, Maryland. Ms. Tolbert had her sign the petition and other papers and instructed her to take them, together with a disk with the list of creditors, to the bankruptcy court. With respect specifically to Schedule C, the debtor testified that she had not specified the applicable exemption statutes. Of the two $600 checks she had given to Mr. Lewis and Ms. Brooke, one cleared but the other did not, and she then paid $600 directly to Ms. Tolbert. At some point, she met again with Ms. Tolbert because a paper the debtor needed had been left out. In any event, the case was dismissed because the debtor had not obtained the required prepetition credit counseling. After obtaining credit counseling, the debtor then commenced the present case by refiling the petition and other papers that Ms. Tolbert had prepared, apparently using "white-out" to change the original signature dates of both herself and Ms. Tolbert from October 15, 2008, to December 2, 2008.

In her filed response to the motion, Ms. Tolbert disputed that she had "selected" the debtor's exemptions and stated:

> I use the Base Case Solutions Bankruptcy Software which generates the forms and codes automatically. The codes listed on Schedule C are based on the

> description given in Schedule B (Personal Property). The software sorts the list of exemptions with the most commonly-applied exemptions for the type of property listed first, followed by the commonly used, followed by those rarely used.

She also stated that she was an "independent contractor" who had agreed with Ms. Brooke to prepare the debtor's petition because Ms. Brooke "could no longer prepare bankruptcy petitions."[5] She further stated that she had no knowledge of what happened during the debtor's meetings with Ms. Brooke or Mr. Lewis and no knowledge of the $200.00 that the debtor had paid to them at the first meeting.

Conclusions of Law and Discussion

I.

This court has subject-matter jurisdiction over the present motion under 28 U.S.C. §§ 1334 and 157(a) and the general order of reference from the United States District Court for the Eastern District of Virginia. Under 28 U.S.C. § 157(b), the imposition of sanctions on a bankruptcy petition preparer is a core proceeding in which a final judgment may be entered by a bankruptcy judge, subject, of course, to the right of appeal. Venue is proper in this district under 28 U.S.C. § 1409(a). The respondent has been properly served and has appeared generally.

II.

A "bankruptcy petition preparer" is a person — other than an attorney or employee of an attorney acting under the attorney's direct supervision — who prepares for compensation any

---

[5] In fact, Ms. Brooke, together with Mr. Lewis and two others, had been indicted by a grand jury in the United States District Court for the District of Maryland on June 11, 2008, for conspiracy, wire fraud, and bankruptcy fraud, and one of her special conditions of release after she was arrested was that she not prepare any bankruptcy petitions. *United States v. Michael K. Lewis*, No. 8:08-cr-289-DKC (D. Md., June 18, 2008), Order Setting Conditions of Release.

5

petition or other document for filing in a United States bankruptcy court or United States district court in connection with a bankruptcy case. § 110(a), Bankruptcy Code. The conduct of bankruptcy petition preparers is regulated by § 110 of the Bankruptcy Code, which was initially enacted as part of the Bankruptcy Reform Act of 1994 and expanded upon by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. The purpose of the statute was to address the proliferation of bankruptcy petition preparers not employed or supervised by attorneys and to enact limitations on and standards for the types of activities in which bankruptcy petition preparers could be engaged, particularly with respect to providing legal advice and engaging in the unauthorized practice of law. *In re Springs*, 358 B.R. 236, 241 (Bankr. M.D. N.C. 2006); *see also In re Crawford*, 194 F.3d 954, 960 (9th Cir. 1999), *cert. denied*, 528 U.S. 1189, 120 S.Ct. 1244, 146 L.Ed.2d 102 (2000); *In re Moffett*, 263 B.R. 805, 812-13 (Bankr. W.D. Ky. 2001); *In re Farness*, 244 B.R. 464, 467 (Bankr. D. Idaho 2000).

Among other things, the statute requires the petition preparer to provide written notice informing the debtor that he or she is not an attorney and may not give legal advice or practice law. § 110(b)(2), Bankruptcy Code. The petition preparer is also required to disclose all fees received from the debtor within the 12 months before the petition was filed and any remaining unpaid fee charged to the debtor. *Id.* § 110(h)(2). The statute prohibits the petition preparer from executing any documents on behalf of the debtor or providing legal advice, *id.* § 110(e); using the word "legal" or any similar term in advertisements, *id.* § 110(f); and collecting any court filing fees from the debtor, *id.* § 110(g). The statute provides a variety of sanctions for any violations, including disgorgement of some or all fees charged, fines, compensatory and statutory damages, and injunctive relief. *Id.* §§ 110(h)(3), (*l*)(1), (i)(1), (j).

III.

In this case, the U.S. Trustee asserts that the fee paid to Ms. Tolbert was excessive and that Ms. Tolbert violated the restrictions on bankruptcy petition prepares in two respects: first by not filing the required disclosure of compensation she received for preparing the debtor's petition and schedules; and second, by selecting the debtor's exemptions.

A.

With respect to the disclosure of compensation, § 110(h)(2), Bankruptcy Code, requires the filing with the petition of "[a] declaration under penalty of perjury by the bankruptcy petition preparer . . . disclosing any fees received from or on behalf of the debtor within 12 months immediately prior to the filing of the case, and any unpaid fee charged to the debtor." A form for making such disclosure has been promulgated by the Director of the Administrative Office of U.S. Courts.[6] No such form was filed with the petition, and while a petition preparer would not normally have control over which papers the debtor ultimately files, the court will assume, in the absence of evidence to the contrary, that Ms. Tolbert did not prepare or execute such a disclosure.[7] She did, however, prepare the statement of financial affairs that reported, in

---

[6] Form B280, available at www.vaeb.uscourts.gov/bkforms/b280.pdf. Because Form B280 is a so-called "Director's Form" rather than an "Official Form," its use is not mandatory, and any form of disclosure that is (a) in writing, (b) executed under penalty of perjury, (c) signed by the bankruptcy petition preparer, and (d) states the fees received from or on behalf of the debtor within the 12-month period and any unpaid fees charged to the debtor will satisfy the statutory requirement.

[7] The court does note, however, that the Declaration and Signature of Non-Attorney Bankruptcy Petition Preparer (Official Form 19) signed by Ms. Tolbert and filed with the petition does reference, among the documents she prepared, "Fee," which (since it would not obviously refer to anything else) may well be shorthand for the Disclosure of Compensation. Thus, the court cannot entirely rule out the possibility that the form was in fact prepared, signed, and given to
(continued...)

response to Question 9, her receipt of $1,199 from the debtor.  Although she did not sign the statement of financial affairs, the Declaration and Signature of Non-Attorney Bankruptcy Petition Preparer does reference "Voluntary Petition," and the court is certainly aware in common parlance even many lawyers do not distinguish between the petition, as such, and the schedules and statements that accompany the petition, and frequently refer to the whole package of papers as the "petition."  Thus, it could be fairly argued that disclosure of the fee on the statement of financial affairs and the execution of Official Form 19 satisfies the spirit of the statute even if not the technical requirement for submission of Form B280 in addition.  But even if that is not the case, the imposition of a fine for a violation of § 110(h)(2) is discretionary with the court, and in light of the partial disgorgement of fees and the substantial statutory damages which the court *must* award, the court concludes that the imposition of a fine in addition would not be appropriate, and the court exercises its discretion not to impose a fine for what is essentially a technical violation.

B.

There remains, however, the question of whether even a $1,199 fee exceeds what is reasonable for the services a bankruptcy petition preparer may lawfully provide.  In this connection, § 110(h)(3)(A)(i) requires the court to "disallow and order the immediate turnover to the bankruptcy trustee [of] any fee found to be in excess of the value of any services" provided in the 12 months prior to the petition date.  Section 110(h)(3)(B) also provides that "[a]ll fees

---

[7](...continued)
the debtor, but for whatever reason was not included with the documents which the debtor subsequently presented for filing.

charged by a bankruptcy petition preparer may be forfeited in any case in which the bankruptcy petition preparer fails to comply with this subsection or subsection (b), (c), (d), (e), (f), or (g)."

In her response to the present motion, Ms. Tolbert argued that her fees were commensurate with the services provided "because of the complexity of the Chapter 13 forms, the amendments and the hours with the client reviewing and transferring the information from the client to the forms." The court notes, however, that the required schedules and statements for a chapter 7 case and a chapter 13 case are identical, with the exception of the means test form, which differs only slightly. The only additional document that must be filed in a chapter 13 case is the repayment plan. Neither the debtor's testimony nor Ms. Tolbert's response indicated who prepared the chapter 13 plan that the debtor filed. In any event, the case law is clear that a petition preparer is limited to performing only "scrivener services" and thus limited to corresponding charges for such limited services. *See, e.g., In re Langford*, 2007 WL 3376664, 2005 Bankr. LEXIS 3201 (M.D. N.C. 2007); *In re Medley*, 2005 WL 3093392, at *3, 2005 Bankr. LEXIS 2290, at *7 (Bankr. M.D. N.C. 2005) ("The practice of preparing bankruptcy petitions, however, is perilous to the non-attorney because once the preparer exceeds the bounds of being a mere scrivener—to exercise discretion in providing guidance or advice—the preparer is in contravention of state laws regulating the practice of law."); *In re Graham*, 2004 WL 1052963, 2004 Bankr. LEXIS 1678 (Bankr M.D. N.C. 2004). In *Moore*, the court found that a petition preparer's services "must be limited to typing the documents as directed by his customer." 290 B.R. 287, 297-98 (Bankr. E.D. N.C. 2003). The court in *Graham* listed the activities to which a petition preparer is limited, including meeting a prospective debtor, providing blank bankruptcy forms for the debtor to complete without assistance, typing the

information on the bankruptcy forms without making any changes, copying the prepared documents for the debtor, and providing the original documents and copies to the debtor. *Graham*, 2004 WL 1052963, at *9, 2004 Bankr. LEXIS 1678, at *27.  Cases from other circuits are to the same effect. *See e.g., Rojero*, 399 B.R. 913, 920 (Bankr. D. N.M. 2008); *In re Gaftick*, 333 B.R. 177, 188 (Bankr. E.D. N.Y. 2005); *In re Woodward*, 314 B.R. 201, 205 (Bankr. N.D. Iowa 2004); *Bonarrigo*, 282 B.R. 101, 107 (Bankr. D. Mass. 2002); *Bush*, 275 B.R. 69, 84-86 (Bankr. D. Idaho 2002); *Gomez*, 259 B.R. 379, 386 (Bankr. D. Colo. 2001); *Guttierez*, 248 B.R. 287, 297-98 (Bankr. W.D. Tex. 2000); *Farness*, 244 B.R. at 467.  *But see Meininger v. Burnworth (In re Landry)*, 268 B.R. 301, 308 (Bankr. M.D. Fla. 2001) (court accepted hourly rate for the petition preparer, a paralegal, similar to billable rates for paralegals in local law firms).  Because petition preparers may not engage in the unauthorized practice of law, they are necessarily limited in the services they may provide, and thus, they may only be compensated for those services they are legally allowed to perform.  In addition, once a question has been raised regarding the petition preparer's fees under § 110(h)(3), the petition preparer bears the burden of proving the reasonableness of a fee charged or received.  *See Springs*, 358 B.R. at 242-43; *In re Haney*, 284 B.R. 841, 850-51 (Bankr. N.D. Ohio 2002); *Bush*, 275 B.R. at 85-86.

This court has previously held that a petition preparer's fees should ordinarily be no more than $160 for the services he or she is lawfully allowed to provide.  *See In re Darryl Shorts*, Case No. 08-14487-SSM (Bankr. E.D. Va. Mar. 11, 2009).  In the absence of any evidence by the respondent (such as testimony as to the actual time spent) to show that a greater amount was reasonable in this case, the court will adopt its prior ruling and order the disgorgement of the difference — $1,039 — between the amount Ms. Tolbert admitted to receiving and the

presumptively reasonable amount. Although the statute literally requires that the disgorged fee be paid to the trustee, the debtor's case was dismissed without confirmation of a plan, which results in any funds received by the trustee being returned to the debtor. § 1326(a)(2), Bankruptcy Code. Accordingly, the court will direct that the disgorged fees be paid to the debtor.

C.

Finally, the U.S. Trustee seeks statutory damages under § 110(i), which requires the court to order payment to the debtor of any actual damages *plus* the greater of $2,000 or "twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services" for *any* violation of § 110 or if the court finds the petition preparer engaged in a "fraudulent, unfair, or deceptive" act. § 110(i)(1)(B), Bankruptcy Code. In this case, there has been no evidence of any actual damages sustained by the debtor. The U.S. Trustee argues, however, that Ms. Tolbert, by selecting the exemption claimed by the debtor, engaged in the unauthorized practice of law and thus committed a "fraudulent, unfair, or deceptive" act.

Ms. Tolbert denies that she engaged in the unauthorized practice of law and asserts that she simply accepted the exemptions suggested by the bankruptcy form preparation program.[8] Numerous courts have held, however, that the picking of exemptions for a debtor by a petition

---

[8] The court will take judicial notice that the program in question is marketed to, and widely used by, bankruptcy attorneys. It is unquestionably true that most modern computer programs — at least the "user friendly" ones — provide default or suggested responses when prompting for user input, thereby reducing the labor of manual input and enhancing productivity. Such software features are obviously to be encouraged. At the same time, the suggested or default response may not always be appropriate and may need to be overridden. Determining whether to accept or override a suggested statutory basis for the exemption of a particular asset requires the exercise of legal knowledge and skill.

11

preparer is the unauthorized practice of law. *See, e.g., In re Rojero*, 399 B.R. at 920; *Springs*, 358 B.R. at 245; *In re Bush*, 275 B.R. at 83; *Dunkle*, 272 B.R. 450, 455-56 (Bankr. W.D. Pa. 2002); *In re Gomez*, 259 B.R. 379, 387 (Bankr. D. Colo. 2001); *Guttierez*, 248 B.R. at 296; *Farness*, 244 B.R. at 471; *Kaitangian*, 218 B.R. 102, 110 (Bankr. S.D. Cal. 1998). As one court has noted, "advising of available exemptions from which to choose, or actually choosing an exemption for the debtor with no explanation, requires the exercise of legal judgment beyond the capacity and knowledge of lay persons." *Kaitangian*, 218 B.R. at 110; *see also McDow v. Mayton*, 379 B.R. 601, 607 (E.D. Va. 2007). The result does not change simply because the software program used by the respondent "selected" the claimed exemptions, as "[p]lugging in solicited information from questionnaires and personal interviews to a pre-packaged bankruptcy software program constitutes the unauthorized practice of law." *Kaitangian*, 218 B.R. at 110*; see also Rojero*, 399 B.R. at 920 ("[The petition preparer] made those elections, even if her bankruptcy software program automatically uses the [state] exemption statutes. Such actions constitute an unauthorized practice of law."); *In re Hennerman*, 351 B.R. 143, 151 (Bankr. D. Colo. 2006) ("The software based automation is inherently "legal advice" by a bankruptcy petition preparer."); *Farness*, 244 B.R. at 472 ("He is not saved by his use of . . . bankruptcy software which automatically placed the information he solicited from the Debtors' [sic] into the appropriate schedule.)

Even though Ms. Tolbert may have relied on a computer program rather than on her own knowledge or analysis, she, rather than the debtor, effectively chose which exemptions the debtors would claim on Schedule C. The act of selecting exemptions requires "the exercise of legal judgment" as it requires knowledge both of the Bankruptcy Code and the state exemption

statutes. The Bankruptcy Code allows an individual debtor to exempt from the bankruptcy estate either the property listed in § 522(d) — commonly referred to as the "federal exemptions" — or property that is exempt under the law of the state in which the debtor has resided during the 730 days prior to the filing of the bankruptcy petition. § 522(b)(1), (3), Bankruptcy Code. If the debtor has not resided in one state for the 730-day period, the applicable state law is the state in which the debtor has resided for the greater portion of the 180-day period preceding the 730-day period. *Id.* § 522(b)(3)(A). The state whose exemption laws control, however, may by statute "opt out" of allowing its residents to take the federal exemptions. *Id.* § 522(b)(2). The majority of states — including, for instance, Virginia and Maryland, but not the District of Columbia — have opted out, with the result that only state exemptions and general (non-bankruptcy) federal exemptions, such as the exemption for Social Security benefits, can be taken if the laws of that state apply.

It would appear that the debtor lived in Virginia for the entire 730 days preceding the filing of the bankruptcy petition. She was therefore limited to taking the exemptions authorized by Virginia law and any general (non-bankruptcy) federal exemptions. Virginia's exemption scheme, however, is not simple. There is a list of specific items of property — some with dollar limits, some without — commonly referred to as the poor debtor's exemption. Va. Code Ann. § 34-26. In addition, a debtor may, under what is commonly referred to as the homestead exemption, protect up to $5,000 of real or personal property not otherwise exempt by recording an instrument (known as a homestead deed) describing that property in the city or county in which the debtor resides, and, if real property is claimed, in the city or county in which the property is located. *Id.* §§ 34-4, -4.1, -13. Additional amounts may be claimed exempt if the

13

debtor has a qualifying dependent or is a disabled veteran. *Id.* §§ 34-4, -4.1. Other statutes exempt personal injury and wrongful death recoveries, a portion of a debtor's wages, and retirement savings plans. *Id.* §§ 34-28.1, -29, -34. Finally, real or personal property held as tenants by the entirety is exempt from the claims of non-joint creditors of a husband and wife but may be administered by the trustee for the benefit of joint creditors. *Vasilon v. Vasilon*, 192 Va. 735, 66 S.E.2d 599 (1951); *Sumy v. Schlossberg*, 777 F.2d 921 (4th Cir. 1985).

In preparing the debtor's schedules, Ms. Tolbert's selection of the Virginia exemption scheme and the specific Virginia statutes applicable to a particular item of property implied her possession and use of legal knowledge or skill and were an "exercise of legal judgment beyond the capacity and knowledge of lay persons." *Kaitangian*, 218 B.R. at 110. As one court has noted, "Adequate legal representation requires familiarity with bankruptcy law and its interplay with state law …. [A]ll phases of analysis and document preparation, including resort to reference and document preparation resources, require … legal knowledge skill and experience." *Gomez*, 259 B.R. at 386. Thus, the court concludes that the respondent engaged in the unauthorized practice of law by selecting the claimed exemptions listed on the debtor's Schedules C.

The U.S. Trustee argues that by engaging in the unauthorized practice of law, the respondent has by definition committed a "fraudulent, unfair, or deceptive act" within the meaning of § 110(i)(1). Although the Bankruptcy Code does not define "fraudulent, unfair, or deceptive" conduct, courts have uniformly held that the unauthorized practice of law constitutes a "fraudulent, unfair, or deceptive" act. *Springs*, 358 B.R. at 246 ("a petition preparer who engages in the unauthorized practice of law commits an unfair or deceptive act pursuant to

14

Section 110(I)"); *see also Frankfort Digital Servs., Ltd. v. Neary (In re Reynoso)*, 315 B.R. 544, 553 (9th Cir. BAP 2004); *Rojero*, 399 B.R. at 921; *Gomez*, 259 B.R. at 387-88; *Guttierez*, 248 B.R. at 294. Thus, the court concludes that Ms. Tolbert has, indeed, engaged in fraudulent, unfair, or deceptive conduct within the meaning the statute.

Once such conduct is shown, an award of statutory damages is mandatory even in the absence of any actual damages. § 110(i)(1), Bankruptcy Code.  Such damages are computed as the greater of $2,000 or twice the amount paid to the bankruptcy petition preparer. *Id.*  Since Ms. Tolbert, by her own admission, received at least $1,199 from the debtor, statutory damages are properly computed as twice that amount, or $2,398.00.

A separate order will be entered consistent with this opinion.

Date: _____                  _____
                                                            Stephen S. Mitchell
Alexandria, Virginia                                        United States Bankruptcy Judge

Copies to:

Dennis Early, Esquire
Assistant United States Trustee
115 South Union Street, Suite 210
Alexandria, VA  22314
Counsel for the movant

Julia Mae Tolbert
4668 Winterberry Lane
Oxon Hill, MD 20745
Respondent *pro se*

Wendy Leana Gross
14903 Enterprise Lane
Woodbridge, VA 22191
Debtor *pro se*

Thomas P. Gorman, Esquire
300 N. Washington St., Suite 400
Alexandria, VA 22314
Chapter 13 Trustee